USCA1 Opinion

 

 UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT ____________________ No. 93-1527 KNAPP SHOES, INC., Plaintiff, Appellant, v. SYLVANIA SHOE MANUFACTURING CORPORATION, Defendant, Appellee. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS [Hon. Lawrence P. Cohen, U.S. Magistrate Judge] _____________________ ____________________ Before Breyer, Chief Judge, ___________ Boudin and Stahl, Circuit Judges. ______________ ____________________ Timothy C. Blank with whom Bernard J. Bonn III, Dina Warner and _________________ ___________________ ___________ Dechert Price & Rhoads were on brief for appellant. ______________________ Joseph B. Green with whom Bennett H. Klein and Kotin, Crabtree & ________________ _________________ _________________ Strong were on brief for appellee. ______ ____________________ February 10, 1994 ____________________ BOUDIN, Circuit Judge. Knapp Shoes Inc., the plaintiff _____________ in this commercial dispute, appeals from the district court's order dissolving a preliminary injunction. That injunction had frozen assets of the defendant, Sylvania Shoe Manufac- turing Corp., in an amount sufficient to satisfy a potential judgment in Knapp's favor. Because we find that the primary ground of the court's order is a defense that was waived by Sylvania, and that the court's findings were insufficient to support its action on the alternative ground urged by Sylvania, we vacate the order dissolving the preliminary injunction. I. Knapp sells work shoes at both the wholesale and retail levels, including a line of shoes with a patented slip- resistant rubber sole. Beginning in 1986 or 1987, Knapp placed orders with Sylvania for the latter to manufacture and supply Knapp with several different styles of shoes incorporating Knapp's slip-resistant sole. Knapp intended to resell the shoes both through its retail outlets and directly to large customers in the restaurant, hotel and other industries. Between 1987 and 1989, Sylvania manufactured and delivered over 250,000 pairs of shoes to Knapp. Sometime in 1987, Knapp became concerned about the quality of the shoes manufactured by Sylvania. The primary problem was the tendency of the sole to separate from the -2- -2- leather body of the shoe. Although the parties disagreed (both then and now) as to the extent of the problem, Sylvania made a number of changes in construction of the shoes in order to eliminate the problem. According to its later complaint, Knapp was assured by Sylvania on various occasions between 1987 and 1989 that the sole adhesion problem had been remedied. These assurances, Knapp asserts, were untrue; it says that the proportion of defects remained high and in some periods approached 100% for certain styles. On April 10, 1990, Knapp filed this diversity action under Massachusetts law for breach of contract (count 1), breach of express warranty and implied warranties of merchantability and fitness (counts 2-4), breach of the duty of good faith and fair dealing (count 5), fraud and negligent misrepresentation (counts 6 and 7), and violation of Mass. Gen. Laws Ann. ch. 93A (count 8).1 The gravamen of all these claims was that too many of the shoes manufactured by Sylvania and sold to Knapp were defective. Knapp's complaint was quite detailed in setting forth the categories of damages it claimed to have suffered. These included increased costs of inspection and for handling and returning defective shoes; lost profits due to Knapp's ____________________ 1Chapter 93A outlaws "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." Mass. Gen. Laws Ann. ch. 93A, 2(a), and it permits awards of multiple damages and attorney's fees. Id. 11. ___ -3- -3- inability to fill orders for customers; losses due to Sylvania's refusal to give credit for certain shoes that Knapp did return or attempted to return; increased costs because Knapp was forced to make substitute purchases from other manufacturers; credits and price concessions Knapp had to afford its own customers because of their dissatisfaction with defective shoes; and losses in good will and in customer orders due to Sylvania's conduct. Sylvania filed an answer and counterclaim. The answer denied virtually all of the incriminating allegations. It also asserted 13 affirmative defenses, including estoppel, disclaimer of warranties, unclean hands, laches and contributory negligence. Sylvania's counterclaim alleged that Knapp still owed Sylvania about $277,000 for shoe orders not yet paid (Sylvania also claimed multiple damages and attorney's fees under Chapter 93A). The counterclaim suggested that any defects were due to Knapp's own specification of materials to be used in manufacturing its shoes. Both parties consented to proceed before a magistrate judge and waived a jury trial. The trial was bifurcated, with the liability phase covering nine trial days in January 1991. At the conclusion of this phase, the magistrate judge on January 31, 1991, entered a four-page memorandum and order that devoted one paragraph each to five of Knapp's eight -4- -4- counts, without discussing Sylvania's counterclaim. The first substantive paragraph reads as follows: Except to the extent that plaintiff has shown, or can show, that shoes manufactured by defendant and delivered to plaintiff, and/or shoes manufactured by defendant to be delivered to plaintiff, were, in fact, defective, plaintiff has failed to satisfy this court by a preponderance of the evidence that defendant breached an express _______ warranty. None of the parties anticipated, or could, in the circumstances, reasonably anticipate, that each and every shoe manufactured by defendant for the plaintiff would be free of defect. On its part, defendant expressly promised that it would use its best effort to produce a defect-free shoe, and that it would credit plaintiff's account for those defective shoes which plaintiff returned. All parties clearly understood that that was the extent of the express warranty, nothing more, and nothing less. In the subsequent paragraphs, the magistrate judge found that Knapp had failed to prove fraud, negligent misrepresentation or--"except to the extent that plaintiff has shown, or can show," a refusal by Sylvania to credit returned defective shoes--breach of the duty of good faith and fair dealing. As for Knapp's chapter 93A claim, the order said that Sylvania had not been shown to have engaged in conduct so unscrupulous as to make it liable for multiple damages; it noted, but did not decide, the question whether attorney's fees might be due Knapp under chapter 93A on the -5- -5- theory that a breach of warranty was a violation of chapter 93A under a regulation of the state's attorney general. In May 1991, prior to the damages phase of trial, Knapp discovered that Sylvania was going out of business and liquidating its assets. Fearful that Sylvania would soon be judgment-proof, Knapp obtained a temporary restraining order precluding Sylvania from dissipating assets in the amount of $3,775,657.22--the amount of damages that Knapp hoped to prove in the next phase of the trial. The magistrate judge modified this order on June 10, 1991, converting it into a preliminary injunction and amending it to allow Sylvania to make limited payments to its creditors and lawyers. The damages phase of trial took place over five days in June 1991; at Sylvania's behest, an additional day of evidence was heard on November 25, 1991. Proposed findings were filed by both sides in March 1992. It appears that nothing further occurred during the next 12 months until, in March 1993, the magistrate judge issued an order proposing to certify certain questions to the Massachusetts Supreme Judicial Court. Both sides opposed certification, but on April 8, 1993, the magistrate judge certified two questions to the Supreme Judicial Court; both related to the possible application of Chapter 93A to "a simple breach of warranty."2 ____________________ 2The first question was whether a regulation issued by the state attorney general under chapter 93A, defining a violation to include a breach of warranty, applied to a -6- -6- In the certification, the magistrate judge prefaced the two certified questions with a ten-page statement. The statement repeated the magistrate judge's rulings on the five counts discussed in its January 31, 1991, order, and then made several additional findings of fact and conclusions of law. These determinations were prefaced by a statement that "only the ultimate findings and conclusions are set forth herein - not the subsidiary findings and conclusions." The magistrate judge determined inter alia that: __________ 1. . . . . By their express negotiations, by their express understandings, and by their express course of dealings, Sylvania promised Knapp that, in the event that shoes were defectively manufactured, Knapp's remedy, and sole remedy, would be the replacement ____ of [or credit for] those shoes shown to be defective and returned - nothing more, and nothing less [footnote omitted]. 2. Because of this clear and express understanding between the respective parties, Knapp's sole ____ remedies, in terms of breach of contract, or under the relevant provisions of the Uniform Commercial Code, are limited to the replacement of [or credit for] those shoes shown to be defective and returned to Sylvania. Other determinations included a ruling that Sylvania was obliged to give a credit for or replace any defective shoes ____________________ transaction of the kind described by the magistrate judge, namely, a breach as between two similarly situated businesses based on delivery of a "minute" portion of non-conforming goods. If the answer were yes, the second question asked whether the regulation was valid under the authorizing statute. -7- -7- returned by Knapp; a statement that many of the shoes returned by Knapp's customers were made by an overseas supplier; a finding that Sylvania acted in "the utmost good faith" to correct a problem "not reasonably foreseen" by either side; and a finding in a final footnote that "at best . . . approximately three (3) percent of the shoes were allegedly defective . . . and as to a majority of those shoes, credit was given to Knapp when those shoes were returned . . . ." The Supreme Judicial Court has yet to act on the questions certified by the district court. But on the strength of the magistrate judge's findings in the certification order, Sylvania moved on April 8, 1993, to dissolve the preliminary injunction. The magistrate judge granted this motion on May 5, 1993, concluding that its earlier findings left Knapp with so little hope of substantial recovery that the freeze on Sylvania's assets could no longer be justified. The order set forth findings 1 and 2 from the certification, quoted in pertinent part above. Knapp filed a notice of appeal on May 11, 1993, and this court stayed the magistrate judge's order dissolving the preliminary injunction pending the outcome of this appeal. We have jurisdiction pursuant to 28 U.S.C. 1292(a)(1), which permits appeals from interlocutory orders dissolving injunctions. -8- -8- II. This circuit has not explicitly addressed the standard to be applied by a district court in deciding whether to dissolve a preliminary injunction. But we think it evident that in the ordinary case dissolution should depend on the same considerations that guide a judge in deciding whether to grant or deny a preliminary injunction in the first place. The familiar quartet includes likelihood of success, the threat of irreparable injury to the party seeking interim relief, the equities and the public interest.3 It is not surprising that a fresh look after the trial evidence is in might produce a different judgment about the probability of success. In dissolving the preliminary injunction in this case, the magistrate judge relied upon his certification findings that the parties had agreed to limit their remedies under the contract to return and replacement or credit for defective shoes. As already noted, the magistrate judge concluded in finding number 1 that "[b]y their express negotiations, by their express understandings, and by their express course of dealings, Sylvania promised Knapp that, in the event that shoes were defectively manufactured, Knapp's remedy, and sole ____ ____________________ 3See, e.g., Teradyne, Inc. v. Mostek Corp., 797 F.2d 43, ___ ____ ______________ ____________ 51 (1st Cir. 1986); Planned Parenthood League of _________________________________ Massachusetts v. Bellotti, 641 F.2d 1006, 1009 (1st Cir. _____________ ________ 1981). -9- -9- remedy, would be the replacement of [or credit for] those shoes shown to be defective and returned - nothing more, and nothing less." Accordingly, the magistrate judge held that Knapp's claims for damages, see Mass. Gen. Laws Ann. ch. 106, 2-715 ___ (buyer's ordinary damages), 7-16 (incidental and consequential damages), over and above credits for shoes actually returned to Sylvania, were barred by Mass. Gen. Laws Ann. ch. 106, 2-719;4 hence, Knapp's likelihood of substantial recovery was insufficient to support the preliminary injunction. We need not decide whether a section 2-719 defense was supported by the evidence, because we hold that Sylvania waived any such limitation of remedies defense by failing to raise it in a timely fashion. ____________________ 4Mass. Gen. Laws Ann. ch. 106, 2-719, pertinently provides: Contractual Modification or Limitation of Remedy (1) . . . (a) the agreement may provide for remedies in addition to or in substitution for those provided in this Article and may limit or alter the measure of damages recoverable under this article, as by limiting the buyer's remedies to return of the goods and repayment of the price or to repair and replacement of non-conforming goods or parts; and (b) resort to a remedy as provided is optional unless the remedy is expressly agreed to be exclusive, in which case it is the sole remedy. -10- -10- Fed. R. Civ. P. 8(c) requires a party to affirmatively plead certain specified defenses, as well as "any other matter constituting an avoidance or affirmative defense." Affirmative defenses not so pleaded are waived. See FDIC v. ___ ____ Ramirez-Rivera, 869 F.2d 624, 626 (1st Cir. 1989). We have ______________ previously held that a statutory provision limiting damages to a fixed sum constituted an affirmative defense for purposes of Rule 8(c). Jakobsen v. Massachusetts Port ________ ___________________ Authority, 520 F.2d 810, 813 (1st Cir. 1975). Section 2-719 _________ performs the same damage limitation function, and there is no reason to reach a contrary result here. See also Ingraham v. ________ ________ United States, 808 F.2d 1075, 1079 (5th Cir. 1987). _____________ Sylvania failed to raise the defense in its answer, its amended answer, its pretrial memorandum, or its proposed jury instructions.5 Indeed, there is no indication that either of the parties thought that a limitation of remedies issue was present in the case until the ninth and final day of the liability phase of trial. At that point, after all of the evidence had been submitted, the magistrate judge said "[w]e've got a problem, I think under Section 719(b) of whether or not . . . the parties agreed that defective returns, credits for [sic] would be the sole remedy." ____________________ 5The parties submitted proposed jury instructions prior to their waiver of trial by jury and consent to proceed before the magistrate judge. -11- -11- Sylvania does not dispute that the limitation of remedies is an affirmative defense. Nor does it suggest that it raised that defense in its answer or elsewhere. Instead, Sylvania argues that the statement of the magistrate judge at the close of the liability stage, as well as later ones made by the magistrate judge in the damages phase, put plaintiffs on notice as to the issue. We do not agree. The reason why affirmative defenses under Rule 8(c) must be pled in the answer is to give the opposing party notice of the defense and a chance to develop evidence and offer arguments to controvert the defense. Blonder-Tongue ______________ Laboratories, Inc. v. University of Illinois Foundation, 402 ___________________ _________________________________ U.S. 313, 350 (1971). Some courts have excused noncompliance with Rule 8(c) if "a plaintiff receives notice of an affirmative defense by some means other than pleadings" and is not prejudiced by the omission of the defense from the initial pleading. E.g., Moore, Owen, Thomas & Co. v. Coffey, ____ _________________________ ______ 992 F.2d 1439, 1445 (6th Cir. 1993). This court reached the same result where a defense "has been fully tried under the express or implied consent of the parties, as if it had been raised in the original responsive pleading." Ramirez-Rivera, ______________ 869 F.2d at 626-27. We need not decide whether notice and no prejudice would also serve as an excuse in this circuit, cf. Jakobsen, 520 __ F.2d at 813 (referring favorably to the no-prejudice test), -12- -12- since we find that neither the Coffey nor the Ramirez-Rivera ______ ______________ standard was met here. In the present case, the limitation of remedies issue was not raised until virtually the end of the liability trial, after discovery and the submission of all of the evidence on liability. Nor did the parties' presentation of witnesses or documents focus on this issue. Rather, the magistrate judge's ruling seems to have derived from a fragment of testimony from one witness: a former Knapp executive named John Esser testified that he had told the Knapp president in July 1989 that Sylvania "[had] agreed and will agree, if we do have a claim, to take back any shoes, and always have." This is pretty thin stuff, even coupled with evidence from other sources that the parties had extensive arrangements for the return of defective goods in exchange for credit. The question, after all, is not whether credits were an available remedy but whether the parties had agreed that credits were the exclusive remedy. See Mass. Gen. Laws ___ Ann. ch. 106, 2-719(1)(b) (quoted in note 4 above). More to the point, Esser's statement in context was not elicited by Sylvania to show that credits were the exclusive remedy, nor did Knapp cross-examine in order to refute such a suggestion, which after all Sylvania had not previously made. Thus the parties did not litigate the limitation of remedies issue in the liability phase of the trial. -13- -13- Nor was the issue litigated in the damages phase. Although in this phase the magistrate judge adverted to the limitation of remedies issue, his brief remarks suggest not that it was now open to litigation but rather that the parties either had or should have addressed the issue in the liability phase of the trial.6 One can argue as to whether the limitation of remedies issue is better described as a liability or a damage issue. But in this case, the issue was not litigated in the former phase and it would have taken a fortune teller to suppose that such evidence would be welcomed in the latter phase. In sum, we conclude that Sylvania waived the limitation of remedies defense by failing to assert it in the answer or by amendment in accordance with Rule 8(c). The defense was not resurrected either by clear notice given prior to trial or by actual litigation of the issue in the course of trial. Thus the limitation of remedies defense is out of the case and cannot support the order vacating the injunction. III. ____________________ 6On the first day of the damages trial the magistrate judge, in ruling on an in limine motion by Sylvania to limit _________ evidence, said that the motion was granted "to the extent it's already [sic] on what type of remedy is available as opposed to what damage is suffered." In a written order the next day, the magistrate judge--speaking of the liability phase--said: "An overriding issue - recognized, or which should have been recognized by the parties - was and is whether parties agreed to limit their respective remedies . . . ." -14- -14- Sylvania argues that the order under review may, in the alternative, be upheld based on the magistrate judge's finding that only a very small percentage of the shoes manufactured by Sylvania for Knapp were defective. If only a very small fraction of the shoes made by Sylvania for Knapp were defective, it might well follow that the damages claimed by Knapp were wildly excessive and that the injunction was no longer needed or ought to be reduced in amount. After all, practically all of the types of damage claimed in Knapp's complaint (and recited above) depend as a practical matter on the premise that a large percentage of the shoes were defective. But in this case we have no way to review or sustain the critical determinations--that the defective shoes were a very small quantity--about three percent--because there are no supporting findings by the magistrate judge. Fed. R. Civ. P. 52(a) requires that "in granting or refusing interlocutory injunctions the court shall . . . set forth the findings of fact and conclusions of law which constitute the grounds of its action." This requirement, which also attaches to the court's own final decision in a jury waived trial, id., but ___ not to most other rulings, id., reflects the importance of ___ injunctions and of providing an adequate basis for their appellate review. -15- -15- Sylvania argues that Rule 52(a) is not applicable to this case because the rule, by its terms, applies only to decisions "granting or refusing interlocutory injunctions." Although there is some general support for Sylvania's position, see Baltimore & O. R. R. v. Chicago R. & I. R. R., ___ ____________________ ______________________ 170 F.2d 654, 659 (7th Cir. 1948), cert. denied, 336 U.S. 944 ____________ (1949); Munoz v. Porto Rico Ry. Light & Power Co., 83 F.2d _____ __________________________________ 262, 270 (1st Cir.) (construing Equity Rule 70 1/2, the precursor of Fed. R. Civ. P. 52(a)), cert. denied, 298 U.S. _____________ 689 (1936), both the cases cited involved the district court's refusal to dissolve a preliminary injunction. We _______ agree that where a court made adequate findings when granting the preliminary injunction in the first place, it need not restate those findings in order to maintain the injunction. A decision to vacate an existing preliminary injunction ______ is quite another matter. It is not only a substantial change in the status quo but is the effective equivalent of a denial ______ of a preliminary injunction, an event that unquestionably triggers Rule 52(a)'s requirement of findings. We do not think that it stretches Rule 52(a) unduly to apply it to an order vacating a preliminary injunction. But the need for findings in such a case is so strong that we would impose the findings requirement ourselves if we thought that Rule 52(a) had left an inadvertent loophole. -16- -16- Given our conclusion that Rule 52(a) findings were required, we cannot sustain the order vacating the injunction in this case on the alternative ground offered by Sylvania, namely, the small percentage of defective shoes. The magistrate judge did not rely at all on Sylvania's alternative ground. Instead, in a footnote sentence at the close of the certification, the magistrate judge observed in explaining the questions being certified: "[T]he plaintiff has shown that three (3) per cent of the shoes were allegedly defective." We do not think that this sentence is sufficient for purposes of Rule 52(a). Admittedly, the case law lays down few clear rules as to what is adequate compliance with Rule 52(a). We have said that "conclusory findings" are not enough, Thermo Electron _______________ Corp. v. Schiavone Construction Co., 915 F.2d 770, 773 (1st _____ __________________________ Cir. 1990), but also that "the `judge need only make brief, definite, pertinent findings and conclusions upon the contested matters; there is no necessity for over- elaboration of detail or particularization of facts.'" Applewood Landscape & Nursery Co. v. Hollingsworth, 884 F.2d __________________________________ _____________ 1502, 1503 (1st Cir. 1989). The difficulty in devising a yardstick is not surprising when one considers the great diversity of disputes governed by the rule. -17- -17- In the abstract, one might or might not describe as "conclusory" a magistrate judge's statement that the shoes delivered by Sylvania to Knapp had a defect rate of about three percent: the statement is specific and concrete, but unexplained. In truth, pinning a label like "ultimate" or "conclusory" on a single sentence is not very helpful; Rule 52(a) calls for a level of detail adequate to permit ________ appellate review on factual issues, and what is adequate depends on the importance of an issue, its complexity, the depth and nature of evidence presented, and similar elements that vary from case to case. See generally Kelley v. _____________ ______ Everglades Drainage District, 319 U.S. 415, 420 (1943). ____________________________ Here the percentage of defects is critically important. Of course, the magistrate judge could not know that his own basis for dissolving the injunction would be set aside and that Sylvania would rely on the percentage finding to support the dissolution order. But to the extent that the three percent finding is proffered by Sylvania as a foundation for the dissolution order, it must meet the test of Rule 52(a). For this purpose, the importance of the issue requires more rather than less detail. In this case there is no detail whatever. We do not know how the magistrate judge defined "defect," a disputed issue at trial, nor how he arrived at the three percent figure, nor how he handled Knapp's claim that the percentage -18- -18- of shoes actually returned to Sylvania greatly understated the percentage of defects.7 On all of these issues there is no indication as to why certain witnesses were credited, what data was used or how it was construed, or why competing evidence was rejected. We are thus unable to make a reasoned judgment whether, on this critical issue of defects, the magistrate judge's finding was or was not "clearly erroneous." Fed. R. Civ. P. 52(a). In fairness to the magistrate judge, we note that he did not make the "approximately three (3) per cent" finding either to support a final determination of damages (which has not yet occurred) or to support dissolution of the preliminary injunction (it is Sylvania who is trying to make the finding play that role). Rather the footnote finding was made to flesh out a hypothetical statement in the body of the certification. There is no requirement for Rule 52(a) findings in certifying a legal question to a state court. IV. The trial in this case concluded on November 25, 1991, a year and a half before entry of the interlocutory order that forms the basis of this appeal and over two years prior to the present decision. We see little point in remanding this ____________________ 7Knapp claimed that many of the defective shoes were simply disregarded by customers and that other shoes, which Knapp sought to return to Sylvania as defective, were not accepted by Sylvania. -19- -19- case for further findings with respect to the district court's order dissolving the preliminary injunction. In our view, the energies of both the court and the litigants would be more fruitfully directed toward a final resolution of this case on the merits. Sylvania is, of course, free to file a new motion to dissolve the preliminary injunction. But unless it can show some urgent need for the release of the funds, we would expect the magistrate judge to refuse summarily to revisit the preliminary injunction until the final decision is issued. Knapp's case was once thought to have enough merit to justify an injunction; as yet there are no supported _________ findings that warrant a reappraisal of potential damages; and Sylvania is apparently in the process of distributing all of its unencumbered assets. As for the certification, it relates only to the limited issue of attorney's fees under chapter 93A. Possibly the Supreme Judicial Court will have answered the questions posed by the time the magistrate judge is ready to issue his decision on the merits. If not, the magistrate judge may think that the wiser course, in litigation that has otherwise been ripe for resolution at least since March 1992, is to decide the whole case and make his best conjecture on the chapter 93A issues. -20- -20- One final issue remains. In the order vacating the preliminary injunction, the magistrate judge also dissolved the attachment on trustee process. An attachment on trustee process is an interim remedy that was used here to prevent certain persons owing funds to Sylvania from disbursing them to Sylvania, in effect protecting funds that might be used to satisfy a judgment for Knapp. See Mass. Gen. Laws. Ann. ch. ___ 246 1; Fed. R. Civ. P. 64; Mass R. Civ. P. 4.2. Our stay pending review kept both the injunction and the attachment in effect until disposition of this appeal. Sylvania argues that the dissolution of the attachment is not equivalent to the dissolution of a preliminary injunction and is not an appealable event. Knapp argues that the attachment is appealable, citing Teradyne, Inc. v. Mostek _____________ ______ Corp., 797 F.2d 43, 44-47 (1st Cir. 1986), but we see no ____ reason to resolve this issue. The magistrate judge's rationale for dissolving both the injunction and the _________ attachment was the same. As we have found that rationale to constitute legal error, we assume that the magistrate judge will on his own motion maintain the attachment in force unless and until there is a proper basis for modifying. Sylvania says that the funds under the attachment have been earning no interest for two years. If the funds are unequivocally owing to Sylvania, there should be an easy means for dealing with this problem (e.g., by an arrangement ____ -21- -21- transferring the funds to an interest bearing account subject to the attachment). Nothing in this opinion prevents Sylvania from applying to the magistrate judge for a modification of the attachment to address this or any other problem pertaining to the attachment. The magistrate judge's order dissolving the preliminary injunction is vacated. _______ -22- -22-