USCA1 Opinion

 

 United States Court of Appeals
 For the First Circuit

No. 97-2278

 AMCEL CORPORATION,

 Plaintiff, Appellee,

 v.

 INTERNATIONAL EXECUTIVE SALES, INC., and LOU PETRONE,

 Defendants, Appellants.

 APPEAL FROM THE UNITED STATES DISTRICT COURT

 FOR THE DISTRICT OF MASSACHUSETTS

 [Hon. Reginald C. Lindsay, U.S. District Judge]

 Before

 Selya, Circuit Judge,
 
 Coffin, Senior Circuit Judge,
 
 and Boudin, Circuit Judge.
 
 

 Edward C. Cooley with whom Giarrusso, Norton, Cooley &McGlone, P.C. was on brief for appellants.
 Maureen E. Curran with whom Edward Notis-McConarty and
Hemenway & Barnes were on brief for appellee.

February 25, 1999

 
 

 BOUDIN, Circuit Judge. This appeal centers around an
award of exemplary damages under Mass. Gen. Laws ch. 93A made in
favor of the plaintiff Amcel Corporation and against Lou Petrone,
a defendant in the district court. In the relevant time frame,
Petrone was the president and majority shareholder of co-defendant 
International Executive Sales ("IES"). A truncated history of the
controversy, based on the findings of the trial judge, will suffice
to frame the issues on this appeal.
 Amcel is a Massachusetts company that makes plastic
cutlery and trash can liners for commercial use. Between April
1987 and August 1992, IES served as an exclusive commission sales
representative for Amcel in southern Ohio and West Virginia. 
Pertinently, IES agreed that it would not represent lines that
conflicted or competed with Amcel's product lines. Nevertheless, 
as the district court later found, IES breached this understanding
in several respects.
 Beginning in March 1992, IES--at Petrone's direction--
began to sell to some of Amcel's customers plastic trash can liners
made by Carlisle Plastic, Inc., a competitor of Amcel. Petrone
told his employees, on threat of firing, to conceal these dealings
and lie if necessary. When Amcel inquired about a decline in sales
in Petrone's territory, one of Petrone's subordinates falsely told
Amcel that IES was not selling products in competition with Amcel. 
 Petrone also diverted to Carlisle a customer interested
in liners made from recycled materials, liners that Amcel might
have supplied. In June 1992, when Petrone signed an agreement with
this customer--long supplied by Amcel--Petrone was secretly
negotiating with Carlisle to represent Carlisle instead of Amcel on
a full-time basis. Amcel was told nothing of these events until
August 12, 1992, when Petrone told Amcel that he had a better offer
from Carlisle and--misrepresenting the terms of the offer--Petrone
sought improved terms from Amcel.
 Ultimately, IES resigned as Amcel's representative on
August 14, 1992, effective at the end of that month. Thereafter,
Amcel learned that IES had been selling Carlisle liners to Amcel
customers. In September 1992, Amcel sued IES and Petrone in
Massachusetts state court. The complaint included claims for
breach of contract and for unfair and deceptive acts or practices
in violation of Massachusetts' chapter 93A. After some preliminary
maneuvers irrelevant here, the case was removed by the defendants
to federal district court on May 21, 1993.
 On June 15, 1993, Petrone and IES moved to dismiss for
lack of personal jurisdiction or to transfer to another district. 
The motion also urged that the 93A claim be dismissed because the
acts or practices in question were "alleged" to have occurred in
Kentucky and Ohio rather than "primarily and substantially" in
Massachusetts, as section 93A expressly requires. Mass. Gen. Laws
ch. 93A, 11. On June 24, 1994, the magistrate judge (Judge
Bowler) wrote a thorough decision recommending denial of these
requests, which the district court (Judge Lindsay) later sustained. 
 In refusing the recommended dismissal of the 93A claim,
the magistrate judge pointed out that the case law has been
generous in allowing the "primarily and substantially" requirement
to be met by considering not only the site of the wrongful acts but
also where the plaintiff "received and acted upon" the wrongful
acts and the site of the loss or damages. Clinton Hosp. Ass'n v.
Corson Group, Inc., 907 F.2d 1260, 1265-66 (1st Cir. 1990). After
detailed discussion, Judge Bowler concluded that the complaint
indicated enough ties to Massachusetts to preclude dismissal of the
93A claim on the face of the complaint.
 The case was tried to the bench over 12 days between
December 9, 1996, and January 28, 1997. On September 26, 1997,
Judge Lindsay issued a detailed memorandum decision. On the
contract claim, he found that between March and August 1992, IES
had diverted from Amcel to Carlisle trash can liner sales that
would have produced profits for Amcel in the amount of $221,587. 
This amount, plus interest, was awarded to Amcel against IES. On
appeal, the defendants do not challenge this award.
 On the 93A claim, the judge found that Petrone's conduct,
primarily the incidents already summarized, represented a pattern
of deceptive and unscrupulous conduct and merited trebling of the
contract award. Having imposed liability for actual damages on
IES, he entered judgment for twice this amount ($443,174) against
Petrone, adding attorneys' fees and costs under the 93A claim. SeeMass. Gen. Laws ch. 93A, 11. The judgment relating to the 93A
claim is the subject of this appeal.
 The only claim of error in this court requiring much
discussion is defendants' assertion that the conduct associated
with the breach of contract and diversion of sales to Carlisle did
not occur "primarily and substantially" in Massachusetts. In a
footnote to its decision, the district court said that "Petrone has
failed to raise the issue." The court then said briefly that while
"Petrone made many of his misleading statements in places outside
of Massachusetts,"
 [o]utweighing this factor, however, are the
 facts that (1) Amcel, a Massachusetts company,
 took action in reliance on the statements in
 Massachusetts, and (2) the injury to Amcel was
 sustained in Massachusetts. The court,
 therefore, concludes that the defendants have
 failed to carry their burden of proving that
 the actions took place primarily and
 substantially outside of Massachusetts.

 Although we think that it is quite likely that Amcel
would prevail on this issue if we addressed it on the merits, we
decline to do so because it has not been adequately preserved for
appeal. Under Massachusetts law, the burden is upon the defendant
to disprove the "primarily and substantially" condition, making it
effectively an affirmative defense. Mass. Gen. Laws ch. 93A, 11;
see also Play Time, Inc. v. LDDS Metromedia Comms., Inc., 123 F.3d
23, 32 (1st Cir. 1997). When Petrone and IES answered the
complaint on February 3, 1995, they made no specific reference to
the defense, an omission that would forfeit an ordinary affirmative
defense. Fed. R. Civ. P. 8(c); Knapp Shoes, Inc. v. Sylvania Shoe
Mfg. Corp., 15 F.3d 1222, 1226 (1st Cir. 1994).
 However, we are not concerned with niceties of pleading. 
The controlling objection is that following the answer, the
defendants never developed the defense: it was not mentioned in
their pretrial brief or their post-trial brief in the district
court, and if it was mentioned at any point during the trial,
Petrone and IES have neglected to tell us where. In this court,
Amcel said that the defense had been waived, and defendants filed
no reply brief at all.
 The general rule is that absent extraordinary
circumstances, legal theories not raised in district court cannot
be raised for the first time on appeal as a matter of right. This
limitation has been applied both to issues that are wholly "alien
to the record," United States v. Kobrosky, 711 F.2d 449, 457 (1st
Cir. 1983), and to those that are merely mentioned in the pleadings
but not seriously developed in the record thereafter, see Violette,
62 F.3d at 11. The rule makes special sense where, as here, the
theory is effectively a defense that is out of the case unless
pressed and proved by the defendant.
 The rule has various reasons, applying with different
force in different circumstances. Perhaps most important, often
the other side would try its case differently if it knew of the
issue; and the trial judge would so instruct the jury or make
specific findings on it at a bench trial. See National Ass'n of
Social Workers v. Harwood, 69 F.3d 622, 627-28 (1st Cir. 1995);
Poliquin v. Garden Way, Inc., 989 F.2d 527, 531 (1st Cir. 1993). 
But the rule applies without any showing of prejudice; prejudice is
of concern only where the court is otherwise inclined to relax the
rule. See Harwood, 69 F.3d at 627-28.
 Sometimes on appeal, a legal argument not raised below
(e.g., an objection to evidence or an instruction) is fairly viewed
under the plain error doctrine. But the defendant's failure to
raise and prove a defense for which the defendant carries the
burden of proof involves no judicial error at all; many defenses
are potentially available, the court normally considers only those
pressed by the defense, and a defense ignored by the defendant is
simply forfeit. See Knapp Shoes, Inc. v. Sylvania Shoe Mfg. Corp.,
15 F.3d 1222, 1227 (1st Cir. 1994).
 Now, it is quite true that an issue resolved on the
papers prior to trial may be preserved for appeal--the word "may"
should be stressed, cf. Fusco v. General Motors Corp., 11 F.3d 259,
262-63 (1st Cir. 1993)--even if no further mention is made by
counsel until after the judgment. Thus, if the complaint fails to
state a claim but the district court denies a motion to dismiss,
the issue as posed at the motion stage is normally preserved for
appeal, cf. Bonilla v. Trebol Motors Corp., 150 F.3d 77, 80 (1st
Cir. 1998); Wright & Miller, Federal Practice and Procedure: Civil
2d 2376, at 420 (1994), although the defect might be cured
thereafter (e.g., by proof at trial and an effective amendment of
the pleadings, Fed. R. Civ. P. 15(b)). 
 But this reservation does Petrone no good in this case. 
On the papers, the magistrate judge did not err in recommending
denial of the motion to dismiss the 93A claim. At the complaint
stage, inferences are taken, and doubts are resolved, in favor of
the non-moving party, see Gooley v. Mobil Oil Corp., 851 F.2d 513,
514 (1st Cir. 1988); and given Amcel's location in Massachusetts,
its claim of injury there, and other allegations, there was a
reasonable chance (or more) that Amcel might prevail at trial on
the "primarily and substantially" issue based on the generous
reading of this phrase in the case law. The defendants do not
really argue otherwise but say that the facts developed at trial
show that the condition was not met.
 However, this latter argument seeks to raise an issue
not litigated at trial. Defendants did not refer to the
requirement in their pre-trial brief, or frame it in their papers
as a contested issue, or argue it to the judge in post-trial brief,
or ask for findings concerning it. Of course, some facts in the
record bear on the issue, but gaps also exist. Amcel says, for
example, that witnesses would have been asked about just where
certain misrepresentations were made, if this had been thought
relevant.
 Defendants' best argument is that the district judge,
while explicitly finding that Petrone had "failed to raise the
issue," went on to decide it. We think the fairest way to take the
footnote is as an alternative holding, treating the issue as
forfeited but also as without much merit. Judge Lindsay's
treatment of the merits in the footnote would hardly have been so
terse--the gist is a single sentence (quoted above)--unless he
believed that defendants had abandoned the issue. 
 "Belt and suspenders" is a common and generally desirable
approach in a district court decision. If the reference to
abandonment would otherwise have sufficed, it would be perverse--
and send the wrong message--to change the outcome merely because
the district judge sought to provide further reassurance by a brief
reference to merits. Further, since we join the district court in
thinking that the issue was abandoned, fairness to Amcel would
likely require a remand (to allow it to counter the showing) if we
reached the merits and disagreed with the analysis.
 As we noted at the start, in rare cases, an appeals
court may choose to address a legal theory not fairly developed in
the district court. Although we have spoken of "gross miscarriage
of justice," Johnston, 595 F.2d at 894 (quoting Newark Morning
Ledger Co. v. United States, 539 F.2d 929, 932 (3d Cir. 1976), and
grounds "so compelling as virtually to insure appellant's success,"
id., (quoting Dobb v. Baker, 505 F.2d 1041, 1044 (1st Cir. 1974)),
such language is perhaps not to be taken as a complete formula. 
Compare Harwood, 69 F.3d at 627-28 (listing factors).
 But even under Harwood's more flexible approach, this is
not even an arguable case for considering a forfeited issue. The
issue is not constitutional or one of continuing public importance;
rather, it turns on particular facts that might have been better
developed and analyzed if the issue had been raised below. See id. 
There is a risk of prejudice to the other party here, Amcel. See
id. And there is no excuse for the defendants in not pressing the
issue below except--and this hardly helps--that it is one on which
the defendants would probably have lost. See id.
 The defendants' remaining arguments, unrelated to the
"primarily and substantially" test, need not detain us long. 
Petrone disputes that certain of the collateral conduct he engaged
in was an unfair or deceptive act (e.g., the negotiations with
Carlisle to become its distributor) or that it injured Amcel (e.g.,
the attempt to get a better deal with Amcel by misleading it as to
the supposed terms offered by Carlisle; the transactions with
Amcel, which we have not described, involving Petrone's other
company). All of this is beside the point.
 The district court's core findings as to deceptive acts
and practices related to the diversion of Amcel customers to
Carlisle during the period when IES was committed exclusively to
represent Amcel on the products it made. Admitting that the
standard of review fatally constrains them, see Brennan v. Carvel
Corp., 929 F.2d 801, 813-14 (1st Cir. 1991), the defendants do not
directly quarrel with the key facts found by the district court as
to this set of incidents, the only ones for which damages were
awarded. The other episodes of apparent misconduct by Petrone,
whether rightly or wrongly evaluated, did not control the result.
 Petrone's remaining objection has a certain brazen charm. 
He says, uncontroversially, that the damages properly awarded, and
multiplied if the court chooses, under 93A are those caused by the
unfair or deceptive conduct. See Mass. Gen. Laws ch. 93A, 11. 
He then argues (1) that if Petrone had not concealed his betrayal
of Amcel, Amcel would have terminated IES at once, and (2) that the
deception therefore benefitted Amcel because IES continued to make
sales for Amcel (i.e., for customers not diverted to Carlisle)
until August 1992. The implication is that the court should have
reduced the damages done to Amcel by benefits conferred.
 Any Amcel sales that Petrone did not divert prior to
August 1992 surely did benefit Amcel. But IES was paid a
commission for those sales by Amcel. It is pure speculation to
suppose that those customers would have abandoned Amcel for some
other supplier if IES had been discharged at an earlier point;
Amcel would presumably have commissioned someone else to continue
sales in the same territory. Thus, we need not consider other
possible objections to this off-set theory.
 Affirmed.