In re Terry R. **TALBERT** and Lahna L. Talbert, Debtors.

Terry R. and Lahna L. Talbert, Plaintiff,

v.

City Mortgage Services, Defendant.

Bankruptcy No. 00–09284.
Adversary No. 00–88422.

United States Bankruptcy Court, W.D. Michigan.

Oct. 23, 2001.

---

Marshall A. Yee, Lansing, MI, for Debtors/Plaintiffs.

### OPINION RE:  PLAINTIFFS' MOTION FOR DEFAULT JUDGMENT

JEFFREY R. HUGHES, Bankruptcy Judge.

Terry and Lahna Talbert ("Debtors") commenced an adversary proceeding against Defendant City Mortgage Services ("City Mortgage") to avoid City Mortgage's lien against their residence pursuant to Section 506(d) of the Bankruptcy

Code.[1]  For the reasons stated in this opinion, the court concludes that Debtors may not avoid City Mortgage's lien.

## I.  BACKGROUND

On December 11, 2000, Debtors filed their adversary proceeding against City Mortgage to avoid its lien pursuant to Section 506(d).  The record indicates that Debtors properly served City Mortgage with a summons and complaint.  The record further indicates that City Mortgage did not file an answer or other proper response.  Accordingly, the court set a hearing for entry of a default judgment pursuant to Fed. R. Bankr.P. 7055(b).  Notice of this hearing was also properly served upon City Mortgage.  City Mortgage did not appear at the default judgment hearing or otherwise offer any opposition to the relief requested by Debtors.

■  The court may enter a default judgment against a defendant based upon the factual assertions in the complaint itself provided that they are sufficient to support the relief requested.  *Bonilla v. Trebol Motors Corp.*, 150 F.3d 77, 80 (1st Cir.1998).  For purposes of this opinion, the court accepts as true Debtors' averment that the amount secured by the lien senior to City Mortgage's lien exceeds the value of Debtors' residence, thereby making City Mortgage's lien valueless.

However, the court itself raised the legal question of whether it has the authority under Section 506(d) to avoid even a valueless lien.[2]  Because the court first raised this issue at the default judgment hearing,

it gave Debtors the opportunity to both brief the issue and to present oral argument at a later date.  Debtors filed a post-hearing brief but declined the offer to present oral argument.

## II.  DISCUSSION

■  Application of Section 506(d) in the context of a Chapter 7 proceeding has been a source of confusion for many years.  That section provides that a lien securing a claim against the debtor may be avoided under certain circumstances.

(d) To the extent that a lien secures a claim against the debtor that is not an allowed secured claim, such lien is void unless—

(1) such claim was disallowed only under section 502(b)(5) or 502(e) of this title; or

(2) such claim is not an allowed secured claim due only to the failure of any entity to file a proof of such claim under section 501 of this title.

11 U.S.C. § 506(d).

The initial debate was whether a Chapter 7 debtor could use Section 506(d) to "strip down" an under-collateralized creditor's lien.  Debtors argued that Section 506(d) permitted them to avoid an under-collateralized lien to the extent it exceeded the net value of the asset.  However, the Supreme Court, in *Dewsnup v. Timm*, 502 U.S. 410, 112 S.Ct. 773, 116 L.Ed.2d 903 (1992), held that a Chapter 7 debtor could not use Section 506(d) to "strip down" a lien.

*Dewsnup* was limited to its facts.  Consequently, practitioners and the courts

---

1.  11 U.S.C. § 506(d).  Hereinafter, textual citations to "Section _____" shall mean the United States Bankruptcy Code, 11 U.S.C. §§ 101, *et seq.*

2.  A court may not grant the plaintiff relief which is not supported by the law simply because the defendant has not opposed the

adversary proceeding.  The plaintiff must still establish through its complaint and, when required, through the offer of other proofs the factual elements necessary to establish its claim.  *FCC Natl. Bank v. Roberts (In re Roberts)*, 193 B.R. 828, 831–832 (Bankr. W.D.Mich.1996).

have continued to debate whether a Chapter 7 debtor may still "strip off" a lien which has absolutely no value as of the petition date because of senior liens against the same collateral. Attempts to strip off valueless liens have become more frequent in recent years as lenders have extended home equity loans secured by second, third, and even fourth mortgages against the debtor's home.

The courts are split on whether a Chapter 7 debtor may "strip off" a valueless lien. Compare *In re Yi*, 219 B.R. 394 (E.D.Va.1998), *In re Zempel*, 244 B.R. 625 (Bankr.W.D.Ky.1999), and *In re Farha*, 246 B.R. 547 (Bankr.E.D.Mich.2000) (all holding that a debtor may strip off a lien notwithstanding the Supreme Court's ruling in *Dewsnup* ) with *In re Fitzmaurice*, 248 B.R. 356 (Bankr.W.D.Mo.2000), *In re Laskin*, 222 B.R. 872 (9th Cir. BAP 1998), *Ryan v. Homecomings Financial Network*, 253 F.3d 778 (4th Cir.2001), and *In re Davenport*, 266 B.R. 787 (Bankr. W.D.Ky.2001) (all holding that Section 506(d) prohibits not only stripping down a lien but also stripping off a lien).

After considering both the arguments for and against "stripping off" liens in a Chapter 7 proceeding, this court is persuaded that the Bankruptcy Code does not permit such a practice. This court adopts the reasoning offered in *Laskin, supra*. Laskin involved facts similar to this case. The Laskins had filed a motion to avoid a second deed of trust pursuant to Section 506(d). They asserted that they were entitled to the requested relief because the amount of the first lien securing the property exceeded its value. The holder of the second lien did not respond to the Laskins' motion nor did it appear at the hearing. The bankruptcy court nonetheless denied the motion on the basis that it lacked the authority to grant the relief requested.

The Ninth Circuit Bankruptcy Appellate Panel concluded that Section 506(d) conferred no independent authority upon the debtor or the trustee to avoid either an under-valued or valueless lien. It concluded that the lien avoidance resulting from the operation of Section 506(d) was simply a consequence of the claim allowance process. In other words, if a claim is allowed as secured in a particular amount, then the lien securing that claim is simultaneously adjusted by Section 506(d) to correspond with the allowed amount. This court reached a similar conclusion in *In re Fuller*, 255 B.R. 300, 306 (Bankr.W.D.Mich. 2000)

The *Laskin* panel then observed that the allowance or disallowance of a secured claim is meaningless in a Chapter 7 proceeding unless the trustee is actually disposing of the collateral:

In contrast to Chapter 13, where claims must be allowed or disallowed to determine what gets paid through the plan, and the would-be secured creditor whose claim is allowed only as unsecured gets paid as an unsecured creditor, the allowance of a secured claim, or determination of secured status, is meaningless in a Chapter 7 where the trustee is not disposing of the putative collateral. In *Dewsnup*, the Supreme Court held that § 506(d), which provides "[t]o the extent that a lien secures a claim against the debtor that is not an allowed secured claim, such lien is void ...," does not allow a Chapter 7 debtor to "strip down" a partially secured lien when the creditor's claim is secured by a lien and has been fully allowed pursuant to § 502. Instead, § 506(d) serves the function of voiding a lien when the claim it secures has not been allowed.

There are two reported Chapter 7 cases in which the lien sought to be avoided was totally, as opposed to partially,

unsecured; both reached the result Laskin urges.... In neither *[In re] Howard*[, 184 B.R. 644 (Bankr.E.D.N.Y.)] nor *Yi* does the court indicate whether there was any prior claim allowance proceeding. Both conclude that, since there was no equity to which the lien in question could attach and there could be no secured claim under § 506(a), the lien could therefore be avoided under § 506(d). With all respect to those courts, we think that analysis reverses the statutory process. *Dewsnup* teaches that, unless and until there is a claims allowance process, there is no predicate for voiding a lien under § 506(d). **Absent either a disposition of the putative collateral or valuation of the secured claim for plan confirmation in Chapter 11, 12, or 13, there is simply no basis on which to avoid a lien under § 506(d).**

222 B.R. at 876 (emphasis added) (citations omitted).

This court would go one step further than the *Laskin* panel and hold that the claims allowance procedure is meaningless in a Chapter 7 proceeding even if the trustee is disposing of property which is subject to a creditor's lien. While both practitioners and the courts are accustomed to describing parties who hold liens in the property owned by a Chapter 7 debtor as "secured creditors" and the debt secured by those liens as "secured claims," these labels are misleading. A Chapter 7 trustee does not make distributions to lien holders on account of an allowed secured claim which that lien holder may have against the estate. Section 726 is quite clear that distributions by the Chapter 7 trustee are generally to be limited to only creditors having an allowed priority or non-priority unsecured claims against the estate:

(a) Except as provided in section 510 of this title, **property of the estate** shall be distributed—

(1) first, in payment of claims of the kind specified in, and in the order specified in, section 507 of this title, proof of which is timely filed under section 501 of this title or tardily filed before the date on which the trustee commences distribution under this section;

(2) second, in payment of any allowed unsecured claim, other than a claim of a kind specified in paragraph (1), (3), or (4) of this subsection, proof of which is—

(A) timely filed under section 501(a) of this title;

(B) timely filed under section 501(b) or 501(c)of this title; or

(C) tardily filed under section 501(a) of this title, if—

(i) the creditor that holds such claim did not have notice or actual knowledge of the case in time for timely filing of a proof of such claim under section 501(a) of this title; and

(ii) proof of such claim is filed in time to permit payment of such claim;

(3) third, in payment of any allowed unsecured claim proof of which is tardily filed under section 501(a) of this title other than a claim of the kind specified in paragraph (2)(C) of this subsection;

(4) fourth, in payment of any allowed claim, whether secured or unsecured, for any fine, penalty, or forfeiture, or for multiple, exemplary, or punitive damages, arising before the earlier of the order for relief or the appointment of a trustee, to the extent that such fine, penalty, forfeiture, or damages are not compensation for actual pecuniary loss suffered by the holder of such claim;

(5) fifth, in payment of interest at the legal rate from the date of the filing of the petition, on any claim paid under paragraph (1), (2), (3), or (4) of this subsection; and

(6) sixth, to the debtor.

11 U.S.C. § 726(a) (emphasis added).

■ The visceral reaction to Section 726's clear language is that it is incorrect; that somewhere within this section or elsewhere within the Bankruptcy Code must lie a provision which provides for the allowance and payment of secured claims from property of the Chapter 7 estate. However, careful analysis of Chapter 7 reveals that the Chapter 7 trustee is not to deal with lien holders as creditors with claims against property of the estate but as competing interest holders who must be dealt with as the trustee liquidates the estate property for distribution to the debtor's unsecured creditors.

Section 704 directs the Chapter 7 trustee to "collect and reduce to money **the property of the estate** . . . ." 11 U.S.C. § 704(1) (emphasis added). Section 541, in turn, defines "property of the estate" to include, with some exception, **"all legal or equitable interests of the debtor** in property as of the commencement of the [bankruptcy] case." 11 U.S.C. § 541(a)(1) (emphasis added). In many instances, the debtor's legal and equitable interests in a particular asset will constitute all of the legal and equitable interests in that asset. For example, the debtor may own an unencumbered fee interest in a parcel of real estate. However, in at least some instances, the various legal and equitable interests which comprise the asset will be divided between the bankruptcy estate and one or more third parties. The most common example of such a division of property rights is that of an asset which is owned by the debtor but which is subject to a lien. In that instance, the "property of the es-

tate" is not, by definition, the actual house or car but, instead, is only the debtor's rights with respect to the house or car. The debtor's rights would include the right to possess the asset and the right to realize whatever equity is in the asset upon disposition. Competing with the debtor's bundle of rights are the interests of the lien holder. The lien holder's interest would include the right to repossess the asset from the debtor and a superior right to the proceeds of the asset upon its disposition.

Therefore, while it may be convenient to describe "property of the estate" as being all of the property at the outset of the case in which the debtor has some interest, this description is incorrect. The debtor may have outright title to many of these assets. However, it is also likely that other parties will have competing rights in at least some. Indeed, the competing rights need not be limited to those of a lien holder. A competing right might also be in the form of a co-tenancy, a life estate, or a lessor's interest.

What Congress has empowered the Chapter 7 trustee to do is to dispose of these assets in such a manner as to separate the property of the estate (*i.e.,* the debtor's interest in these assets) from the competing interests in these same assets so that the Chapter 7 trustee may then distribute the property of the estate pursuant to Section 726. A Chapter 7 trustee rarely encounters a case where all of the debtor's assets are owned by the debtor free and clear. Rather, the assets are a "crude oil" consisting of the combined interests of the debtor and of other parties. The trustee, like a petroleum company, is charged with distilling from this raw mixture the debtor's interests (*i.e.,* the property of the estate) so that it may be distributed to unsecured creditors. Lien holders and other interest holders certainly benefit

from this process. However, they do not benefit because the Chapter 7 trustee has a statutory duty to distribute proceeds to them. Rather, they benefit because they are the owners of other valuable byproducts for which the trustee must account as he or she pursues the refining process.

The Chapter 7 trustee may account to these competing interest holders at many different stages of the liquidation process. First, the competing lien or interest may be disposed of with the trustee's administration of the debtor's claimed exemptions. For example, the debtor may own a house which is subject to a valid mortgage and/or a co-owner's interest. If the debtor is successful in claiming as exempt his or her entire equity interest in the house, then that interest will no longer be property of the estate. 11 U.S.C. § 522(*l*). An additional consequence of this result is that the trustee is also no longer obligated to address the competing interest of the mortgagee or co-owner in the exempted house. Those interests simply become irrelevant.

Second, the competing lien interest may be disposed of as part of the abandonment process. For example, the debtor may own a separate parcel of property which is of little, if any, value to the estate because the amount of the lien or other interest encumbering the property equals or exceeds the value of that property. The trustee, after notice and a hearing, may abandon the estate's interest in that property. Again, the attendant consequence of the trustee's decision to abandon would be the elimination of any further effort by the trustee to address the lien holder's competing interest in that asset.

Third, the trustee may utilize the debtor's rights or the trustee's own avoidance powers to defeat the competing interest or lien. For example, a trustee, as successor-in-interest to the debtor, might challenge a competing co-owner's interest in property if that interest had been improperly conveyed to the co-owner. The trustee might also avoid a lien against the debtor's property because it was a preferential transfer. In either circumstance, the effect of the trustee's action would be to eliminate any further need to address the competing interest or lien.

Fourth, the trustee is empowered under Section 363(f), (g), and (h) to dispose of competing interests or liens in an asset simultaneously with the trustee's disposition of the estate's own interest in that asset pursuant to Section 363(b) and (c). For example, the bankruptcy estate may own a parcel of property which is encumbered by a mortgage. If the price which the trustee is to receive from the sale of that property exceeds the amount secured by that lien, then the trustee may proceed to dispose of both the debtor's interest and the mortgagee's interest in that property.[3] The portion of the proceeds equal to the indebtedness secured by that lien is then to be distributed to the lien holder on account of its interest in the proceeds and the remaining portion is to be retained by the estate for distribution to unsecured creditors pursuant to Section 726. In other words, the combined power of the trustee to sell both the estate's interest in the asset pursuant to Section 363(c) and the competing mortgagee's interest pursuant to Section 363(f) permits the trustee to comply with her Section 704(1) duty to "reduce to money the property of the estate" through the distillation of the asset subject to these competing interests into a fungible commodity which can then be divided to reflect what is property of the estate (*i.e.*, the debtor's encumbered fee

---

3. In bankruptcy, parlance, the disposition of the mortgagee's interest in the property is referred to as selling the property "free and clear" of the mortgagee's lien.

interest) and what is not property of the estate (*i.e.*, the amount of the lien held by a third party).

Finally, Section 725 addresses any asset in which the trustee and another party claims an interest which has not already been disposed of through exemption, abandonment, lien/interest avoidance, or sale:

> After the commencement of a case under this chapter, but before final distribution of property of the estate under section 726 of this title, the trustee, after notice and a hearing, shall dispose of any property in which an entity other than the estate has an interest, such as a lien, and that has not been disposed of under another section of this title.

11 U.S.C. § 725.

Section 725 is rarely utilized since one or more of the other processes for disposing of a competing interest will cover most situations confronted by the Chapter 7 trustee. However, Section 725 might have to be invoked in the instance where the estate owns an undivided interest in property which cannot be disposed of separately and which cannot be sold together with the co-owner's interest because the co-owner has withheld his consent and the criteria of Section 363(h) cannot be met. In such an instance, the estate's interest in the property still might be of sufficient value that the interest may not be appropriately abandoned pursuant to Section 554(a). If so, the Chapter 7 trustee might nonetheless be permitted to abandon the estate's interest pursuant to the supplementary authority given to her under Section 725.

Section 726(a)(4) appears to contradict the distribution scheme outlined above. That subsection provides that the Chapter 7 trustee is to distribute property of the estate to creditors holding claims for fines and other similar non-compensatory assessments after other priority and unsecured claims have been paid in full. The problem created by this section is that it mandates such a distribution even if the claim is secured. In other words, Section 726(a)(4) appears to direct the Chapter 7 trustee to distribute property of the estate to a secured claimant after the "refining" process has been completed whereas this court's conclusion is that all competing liens, including liens securing fines and other non-compensatory assessments, should be disposed of prior to the trustee making any distribution pursuant to Section 726.

This apparent inconsistency can be reconciled by construing Section 726(a)(4) in conjunction with Section 510(c).

> (c) Notwithstanding subsections (a) and (b) of this section, after notice and a hearing, the court may—
>
> (1) under principles of equitable subordination, subordinate for purposes of distribution all or part of an allowed claim to all or part of another allowed claim or all or part of an allowed interest to all or part of another allowed interest; or
>
> (2) order that any lien securing such a subordinated claim be transferred to the estate.

11 U.S.C. § 510(c).

If, as Section 726(a)(4) would suggest, claims for fines and other non-compensatory assessments are to be subordinated to other unsecured, non-priority creditors, then it follows that any lien securing that claim should be transferred to the estate pursuant to Section 510(c)(2) so that the subordination may be fully implemented. To accomplish the transfer, the trustee would commence an adversary proceeding prior to the Section 726 distribution to formally subordinate the Section 726(a)(4)-

type claim and to transfer any lien securing that claim to the estate.[4]

■ To summarize, a Chapter 7 trustee's duty is not to administer all of the assets in which the debtor has a legal or equitable interest for the benefit of all parties who may have an interest in these assets. Rather, the Chapter 7 trustee's duty is to reduce to money the legal or equitable interests owned by the debtor in these various assets so that the proceeds may be distributed to unsecured creditors in accordance with Section 726. A third party's interest or lien in the same asset does not constitute property of the estate and the Chapter 7 trustee has no duty to liquidate that interest other than when it is necessary to liquidate the estate's own interest in the property. As such, it is not accurate to characterize the Chapter 7 trustee's distribution of proceeds from the sale of an asset in which the estate claims an interest as payment on account of an allowed secured claim which the lien holder holds against the estate. Rather, the distribution represents nothing more than the Chapter 7 trustee's accounting to the lien holder for the share of the proceeds realized from the Chapter 7 trustee's sale of both the estate's interest in the subject asset and the lien holder's interest.

While the administrative process of liquidating and then distributing property of the estate in a Chapter 7 proceeding does not require the allowance or disallowance of secured claims under Section 506, that procedure may nonetheless be relevant in the context of a Chapter 7 proceeding. For example, Section 722 permits the debtor to redeem property which is subject to a lien for the amount of the allowed claim which the lien holder has against the debtor. Reference to Section 506 is clearly required in this instance. Indeed, Section 506(d) completes the redemption process by avoiding any residual lien the creditor might claim in the redeemed property once the creditor's allowed secured claim has been paid.

### III. CONCLUSION

For the reasons stated in this opinion, Debtors motion for entry of a default judgment is denied. The court will issue a separate order consistent with this opinion. The order will also dismiss the Debtor's adversary proceeding with prejudice.

---

4. In contrast, Section 724(b) supports the distinction this court has drawn between the debtor's interests in a particular asset (*i.e.,* property of the estate) and competing interests in that asset, for it refers to "[p]roperty in which the estate has an interest *and* that is subject to a lien ... that secures an allowed claim for a tax." Section 724(b) then provides that the proceeds allowable to that tax lien may be retained by the Chapter 7 trustee and distributed to creditors other than the tax claimant. At first glance, it would appear that Section 724(b) is another example of the Bankruptcy Code directing the Chapter 7 trustee to make a distribution from property of the estate on account of a secured claim. However, a careful reading of Section 724(b) indicates that the distribution is not made to the tax creditor on account of its secured claim, but on account of its status as the holder of the tax lien. 11 U.S.C. §§ 724(b)(3) and (5).