In re Arthur M. GALLAGHER, Debtor.

No. 01–18953–9P7.

United States Bankruptcy Court,
M.D. Florida,
Fort Myers Division.

July 1, 2002.

Henry D. Paloci, III, La Belle, FL, for Debtor.

Diane L. Jensen, Fort Myers, FL, Chapter 7 Trustee.

### ORDER GRANTING MOTION TO AUTHORIZE SETTLEMENT AND OVERRULING OBJECTION

ALEXANDER L. PASKAY, Chief Judge.

The matter under consideration in this Chapter 7 case is a Motion to Authorize Settlement, filed by Diane L. Jensen, the duly appointed Chapter 7 Trustee (Trustee) of the estate of Arthur M. Gallagher (Debtor). According to the Trustee, among the assets of the estate, there is a claim prosecuted by the Debtor against Quincy Mutual Fire Insurance Company, Inc. (Quincy), John T. Hartley, i/t/a John

T. Hartley Insurance (Hartley), Glenn M. Ritter & McShea Associates, Inc. (Ritter & McShea), and Commerce Bank, which is the lawsuit that the Trustee seeks leave and authorization to settle.

In his suit, the Debtor seeks to recover damages including damages under a policy of insurance covering the Debtor's former residence located at 329 Sykesville Road, Williamstown, New Jersey (Residence). The Trustee contends that prior to the commencement of this Chapter 7 case, attorneys for Quincy filed an Offer of Judgment in the suit filed by the Debtor for the loss of the building at the Residence in the amount of $77,851.12 and on the contents of the Residence of $16,151, which was found to be the actual cash value of the fire losses based on an appraiser's award dated February 27, 2001. The Trustee further contends that the Debtor made a demand for an amount in addition to the Offer of Judgment based on the statutory interest claim and Quincy agreed to pay a total of $104,342.12 in full satisfaction of all of the claims.

According to the Trustee, Commerce Bank holds a mortgage on the Residence of which there is a balance owed of $36,789.11 as of February 14, 2002, plus interest accruing at the rate of $7.20 per day. Commerce Bank agreed to accept a payment of $34,000 provided it is paid not later than June 30, 2002. In addition, according to the Trustee, Owens & Wolf, P.A., the Debtor's attorney, who represented the Debtor and who filed the suit, filed a secured claim in the amount of $114,000. The Trustee disputes this claim as to priority, entitlement, and amount.

It is the contention of the Trustee that the acceptance of the Offer of Judgment by Quincy is in the best interest of the estate in that it saves further additional cost of litigation, and because of a potential loss to the estate if the Trustee fails to

prevail, or if the recovery, if any, is less than the Offer of Judgment. In due course, Owens & Wolf filed an Objection to the Trustee's Motion. In its Objection, Owens & Wolf contends that the suit filed by them on behalf of the Debtor was based on the bad faith of Quincy in dealing with the claim of the Debtor it insured for the fire damage of the Residence, which claim, according to Owens & Wolf is worth $300,000. This amount, if recovered, would make the estate solvent, and would create a surplus for the Debtor. In support of the Objection, it is further contended that the Debtor is in poor health and needs a portion of the insurance proceeds for his medical and living expenses and that by virtue of 11 U.S.C. § 323(a), the Trustee is a fiduciary and has the duty to serve and to protect the financial interest of all groups [sic]. Owens & Wolf further contends that in a solvent estate, the Trustee is also a fiduciary for the Debtor citing, Collier handbook for Trustee's and Debtors' in possession § 4.02 (2001 edition). Owens & Wolf contends that the total amount of claims filed is $172,617.74 and that the Trustee wants to settle the claims for $104,342.12, or producing only a 60% dividend, and if the Commerce Bank is paid, the amount it agreed to receive that would reduce the dividend to 50%. Owens & Wolf points out that the trial court in New Jersey ruled that Quincy is estopped to disclaim coverage under the insurance policy it issued to the Debtor because Quincy was under duty to act diligently on behalf of the insured and investigate the facts of the claim, and if it declines coverage, it must notify the insured promptly. In the present instance, Quincy did not notify its position concerning the claim until 3 and 1/2 years later. According to Owens & Wolf, the Trustee's Motion should be denied and Owens & Wolf should be authorized to pursue the bad faith claim.

The following facts essential to the evaluation of the respective position of the parties, and the soundness of the settlement proposed by the Trustee, have basically been established in the New Jersey litigation and are as follows. On October 27, 1998, a fire partially damaged the Residence formerly owned by the Debtor. Based on information developed by an independent adjuster of Quincy, there was evidence to suggest that the fire was caused intentionally by the Debtor and not as suggested by the local authorities by vandals. This conclusion was based on the following:

(1) the fire erupted within minutes the Debtor left the premises;

(2) as to when the Debtor observed certain satanic symbols painted on the walls;

(3) the Debtor was heavily indebted due to excessive use of credit cards and loans; and

(4) the Debtor did not have sufficient income to meet his living expenses.

The Debtor, not having received any indication from Quincy as to its position on his claim under the policy, in June of 2000 contacted his friend Robert G. Feldman (Feldman), who was an associate in the law firm of Owens & Wolf. After Claims International, Inc., a public adjusting firm, failed to produce any satisfactory resolution of his claim for eighteen months, the Debtor employed the law firm of Owens & Wolf. On June 13, 2000, Owens & Wolf took over the representation of the Debtor in a suit originally filed by the law firm of Rappaport & Rosenberg, in which the Debtor named as defendants Quincy, Hartley, Ritter & McShea, and Commerce Bank.

The initial Complaint filed by Rosenberg, was superseded by a Second Amended Complaint, filed on November 15, 2000.

The Second Amended Complaint contains eight counts. In due course, Quincy filed its Answer coupled with a counterclaim and 27 separate defenses. On September 8, 2000, the Debtor obtained an Order to Show Cause and sought an Order from the trial court declaring that Quincy was estopped from denying coverage under the policy issued to the Debtor covering the Residence.

On October 2, 2000, the trial judge held that due to the delay by Quincy to investigate the Debtor's claim, it was estopped from disclaiming coverage under the insurance policy it issued covering the Debtor's property. Motions for Reconsideration by Quincy of the October 2nd Order were filed on November 17, 2000; December 1, 2000; and on June 8, 2000 were denied by the trial court. On November 19, 2000, Quincy filed a Motion for Leave to file an interlocutory appeal. This Motion was denied on February 13, 2001. On July 9, 2001, the trial court certified the October 2nd Order as final. On August 9, 2001, Quincy filed a Notice of Appeal and the Debtor filed a Cross–Appeal on November 19, 2001. The appeal was pending when the Debtor filed his Voluntary Petition under Chapter 7 in this Court on October 10, 2001, which of course stopped any further proceeding in the appeal due to the operation of the automatic stay. On January 23, 2002, the Debtor received his discharge.

On November 16, 2001, the Trustee filed a Report of Assets and Application for Asset Notice. On November 19, 2001, a Notice was sent out reflecting the bar date for filing claims and fixing the last date to file claims in this case as February 19, 2002. On January 30, 2002, Owens & Wolf filed a secured claim in the amount of $114.373.41. The total of unsecured claims actually filed are in the total amount of $58,244.33.

These are the relevant facts as appear from the undisputed record based on which this Court makes the following conclusions. Before discussing the soundness of the settlement proposed by the Trustee and the Objection to the settlement the following comments should be helpful.

■ The role and capacity of the Trustee is defined by 11 U.S.C. § 323. This section, in subclause (a), provides that the Trustee is the representative of the estate. It would anomalous indeed, as contended by Owens & Wolf, that the Debtor is part of the estate as that term is defined by 11 U.S.C. § 541. Next, it needs no elaborate discussion and citation of authorities to support the proposition that the paramount and primary duty of the Trustee is to collect and reduce to money the property of the estate and to close the estate as expeditiously as is compatible with the best interest of the parties of interest. The term "parties of interest" is not defined by 11 U.S.C. § 101, but it is well established that the property of the estate is liquidated primarily for the benefit of the unsecured creditors and not for the benefit of the secured creditors or the Debtor. *In re Kay,* 223 B.R. 816 (Bankr. M.D.Fla.1998) (chapter 7 trustee has the duty to preserve assets for benefit of creditors who will share in distribution); *In re Davis,* 899 F.2d 1136 (11th Cir.1990) (the trustee does not represent the interest of the debtor alone, rather he owes a complex set of obligations and fiduciary duties to the court, the debtor and the creditors); *In re Talbert,* 268 B.R. 811 (Bankr. W.D.Mich.2001) (trustee's duty is to reduce to money the legal or equitable interests that the debtor possesses so that the proceeds may be distributed to unsecured creditors in accordance with Chapter 7 distribution scheme).

■ From these, it follows that while the interest of the Debtor is recognized to

a limited extent, the Debtor is a party of interest only in the event the chapter 7 case is a surplus case and under the scheme of distribution of 11 U.S.C. § 726(a)(6), he or she would be entitled to share in the proceeds of the liquidation but only to the extent of a surplus. This Court is unaware of any authority that requires the Trustee to spend time and spend estate funds in order to create a possible surplus in order to benefit of the Debtor. This is especially true, in the present instance that there is no surplus but there may be one if the Trustee pursues the claim and ultimately prevails. And, not only must she prevail but she must also produce sufficient funds through litigation after payment of all litigation expenses sufficient to satisfy in full with interest all allowed unsecured claims and have funds left over to turn over to the Debtor.

■ Under Bankruptcy Rule 9019(a), the bankruptcy court may approve a compromise or settlement "on motion by the trustee and after a hearing on notice to creditors, the debtor and indenture trustee...." In conducting a hearing under Rule 9019(a), the bankruptcy court must determine whether the proposed compromise is fair and equitable and in the best interests of the bankruptcy estate. *Protective Committee for Independent Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424, 88 S.Ct. 1157, 1163, 20 L.Ed.2d 1 (1968). In this context, it is appropriate for the bankruptcy court to examine four factors in deciding whether to approve or disapprove a settlement. These factors are as follows: (1) the probability of success in litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and (4) the paramount interest of the creditors and a proper def-

erence to their reasonable view in the premises. *In re Justice Oaks II, Ltd.*, 898 F.2d 1544, 1549 (11th Cir.1990), *cert. denied*, 498 U.S. 959, 111 S.Ct. 387, 112 L.Ed.2d 398 (1990); *In re RFE Industries, Inc.*, 283 F.3d 159, 165 (3d Cir.2002), *citing In re Martin*, 91 F.3d 389, 393 (3d Cir. 1996); *In re Kay, supra.*

■ This Court is aware that in the present instance, the trial court in New Jersey already held that Quincy is estopped to disclaim coverage under the policy issued to the Debtor insuring the Residence. This decision is on appeal. In addition, it is yet to be established what amount the Trustee may recover on the bad faith claim if she prevails on appeal, and what amount of damages she could quantify and persuade the jury to accept the quantification of the damages based on the bad faith claim.

While the Objection to the proposed settlement comes from Owens & Wolf, as a secured creditor, this is unusual because secured creditors rarely, if ever, have any interest of the unsecured creditors or let alone the creation of a surplus for the Debtor. The real motivation of Owens & Wolf is to create a large surplus in order to receive not only a full satisfaction of its secured claim but in addition, payment based on its contingency fee contract from the surplus. Thus, in the last analysis it is evident that the motivation of Owens & Wolf is not to benefit the unsecured creditors but itself and to take out of the general unsecured creditors' return a substantial amount simply because if its claim is ultimately allowed as a secured claim, it must be paid in full before any dividend may be paid on the allowed unsecured claims.

In the present instance, the Trustee has a firm offer of $104,342.12, for the full settlement of all claims of the estate against Quincy and the other defendants. On the other side of the equation, Owens

& Wolf's proposition is based on the expectation to recover $300,000; that this will give a greater return to the unsecured creditors; but that the recovery of this amount is not assured just because of the ruling by the New Jersey trial court. The problem with this optimistic projection is threefold. First, the ruling of the trial court is on appeal and the outcome of this appeal is far less than certain; second, there is nothing in this record to establish that the expectation to recover the $300,000 figure is based on nothing more than an expectation; and third, there is nothing to indicate the additional, no doubt substantial, cost to continue the litigation not only through the appeal process but also through the completion of a trial and possible through additional appeals.

Based on the foregoing, this Court is satisfied that believing in the old adage that a bird in the hand is worth a hundred in the bushes, is still sage advice, the Trustee's Motion to settle the claim of the estate against Quincy and the other defendants is well taken and the Offer of Judgment by Quincy should be accepted.

Accordingly it is,

ORDERED, ADJUDGED AND DECREED that the Objection to the Trustee's Motion to Approve the Settlement be, and the same is hereby, overruled. It is further

ORDERED, ADJUDGED AND DECREED that the Motion to Authorize Settlement be, and the same is hereby, granted. It is further

ORDERED, ADJUDGED AND DECREED that the Trustee shall proceed forthwith and execute all documents necessary to consummate the proposed settlement.